UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA SWAFFORD,

          Plaintiff

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

          Defendant.

Civil Action No.: 18-13913
Honorable George Caram Steeh
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 15,18]**

Plaintiff Tonya Swafford appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- the Commissioner's motion [ECF No. 18] be **GRANTED**;

- Swafford's motion [ECF No. 15] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.  BACKGROUND

   A.  Swafford's Background and Disability Applications

Born April 1, 1979, Swafford was 34 years old at the time of her alleged onset date of June 13, 2013.[2] [ECF No. 11-2, PageID.53, 62]. She submitted her applications for benefits in December 2016 and was insured for DIB purposes through December 31, 2018. [*Id.*, PageID.53, 56]. Swafford has previous work as a pharmacy technician and a housekeeper. [*Id.*, PageID.62]. She claimed to be disabled from fibromyalgia, arthritis in both knees, carpal tunnel syndrome, irritable bowel syndrome with chronic diarrhea, asthma, sleep apnea, bipolar disorder, severe depression, anxiety and morbid obesity. [ECF No. 11-3, PageID.142].

After the Commissioner denied her disability application initially, Swafford requested a hearing, which took place in February 2018, during

---

[2] Swafford's previous applications for DIB and SSI benefits were denied on November 12, 2015. Under the doctrine of *res judicata*, November 13, 2015 is the earliest date Swafford could be found disabled. [ECF No. 11-2, PageID.53].

which she and a vocational expert (VE) testified.  [ECF No. 11-2, PageID.71-113].  In a June 2018 written decision, the ALJ found Swafford not disabled.  [*Id.*, PageID.53-64].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Swafford timely filed for judicial review.  [*Id.*, PageID.1-3; ECF No. 1].

      **B.**    **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4).[3]  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[4]  *Id.*  Third, if the

---

[3] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[4] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Swafford was not disabled. At the first step, he found that she had not engaged in substantial gainful activity since November 13, 2015. [ECF No. 11-2, PageID.56]. At the second step, the ALJ found that Swafford had the severe impairments of "obesity, asthma, fibromyalgia, degenerative disc (sic) disease of the bilateral knees, carpal tunnel syndrome, bipolar disorder, and anxiety." [*Id.*]. The ALJ determined that Swafford's gastroesophageal reflux disease, cholelithiasis, irritable bowel syndrome and obstructive sleep apnea were non-severe impairments. [*Id.*] Next, the ALJ concluded that none of her

4

impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.57-59].

Between the third and fourth steps, the ALJ found that Swafford had the RFC

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 419.967(a) except she can never climb ladders, ropes, scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, kneel, stoop, crouch, and crawl. She can have occasional exposure to extreme cold, humidity and atmospheric conditions. She can perform simple, routine, repetitive tasks involving only occasional contact with the public, co-workers, and supervisors. She requires the ability to take unscheduled breaks of 2-3 minutes at a time throughout the workday provided she is not off task more than 10 percent of the workday. She can frequently reach, handle, and finger with her bilateral upper extremities. She requires a handheld assistive device for prolonged ambulation greater than 50 feet and on uneven terrain.

[*Id.*, PageID.59]. At step four, the ALJ found that Swafford was not capable of performing her past relevant work. [*Id.*, PageID.62]. At the final step, after considering her age, education, work experience, RFC and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Swafford could perform, including positions as order clerk, hand packager and bench assembler. [*Id.*, PageID.63]. The ALJ thus concluded Swafford was not disabled. [*Id.*, PageID.64].

5

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Swafford argues that the ALJ committed reversible by not properly evaluating her fibromyalgia. She contends that the ALJ erred by discounting her consistent complaints of pain, stiffness, fatigue and difficulty concentrating, and focusing instead on the lack of objective medical evidence for her condition in her treatment records. [ECF No. 15, PageID.1241-1242]. The Court disagrees and recommends that the ALJ's decision be affirmed.

6

**B.**

ALJs evaluate subjective symptoms, including complaints of pain, by confirming that objective medical evidence of the underlying condition exists and determining whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. §404.1529; SSR 16-3p, 2017 WL 5180304. The ALJ then assesses any work-related limitations by determining the intensity, persistence and limiting effects of these symptoms. *Id.*

The nature of fibromyalgia complicates this analysis. *Cooper v. Comm'r of Soc. Sec.*, 13-cv-11883, 2014 WL 4606010, at *16 (E.D.Mich., June 17, 2014). In these cases, objective evidence is often unavailing, and overemphasis on it is inappropriate. *Id.*; *Shahin v. Saul*, 18-cv-12939, 2020 WL 38931, at *3 (E.D.Mich., Jan. 3, 2020). Courts in this circuit have routinely remanded matters "because of the ALJ's undue emphasis on the lack of objective evidence." *Cooper*, 2014 WL 4606010, at *16 (collecting cases). Normal findings from diagnostics such as CT scans, X-rays and clinical tests are not persuasive and "test results showing normal strength, gait, or range of motion are not convincing evidence…" of non-disability.

*Id.* (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)); *Shahin*, 2020 WL 38931, at *3.

Other evaluative factors, such as daily activities, treatments and medications also "have diminished significance" in fibromyalgia cases. *Cooper*, 2014 WL 4606010, at *17. A claimant's ability to manage activities like personal care and driving does not mean that she is capable of full-time employment. *Id.* (citing *Rogers*, 486 F.3d at 248; *Payne v. Astrue*, 2008 WL 4372016, at *1 (W.D.Ky. Sept. 23, 2008); *Barker-Bair v. Comm'r of Soc. Sec.*, 2008 WL 926569, at *11 (S.D.Ohio Apr.3, 2008)). And because aggressive treatment is not recommended for fibromyalgia, courts are reluctant in such cases to find that a claimant's conservative treatment undermines her claim for disability. *Id.* at *18 (citing *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011)). Still, "a diagnosis of fibromyalgia, without more, is insufficient to establish…disability." *Shahin*, 2020 WL 38931, at *3 (citing *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)).

"The diminished potency of traditional evidence has heightened the importance of treating sources in fibromyalgia cases." *Cooper*, 2014 WL 4606010, at *18. A treating physician's clinical observations and notes are thus critical in assessing the limitations imposed by fibromyalgia. *Id.* (citing

8

*Byberg v. Comm'r of Soc. Sec.,* 2013 WL 1278397, at *9 (E.D.Mich. Mar 11, 2013), *adopted,* 2013 WL 1278500 (E.D.Mich. Mar. 27, 2013)). But when a treating source does not address a claimant's functional limitations, such as how much weight she can carry or how long she can sit, stand or walk, the treating source's records are of limited use. *Shahin*, 2020 WL 38931, at *4-5; *see also, Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 753 (6th Cir. 2012).

Here, with no opinion from any treating physician, the ALJ's decision properly relied on the clinical notes and treatment records from Swafford's treating physicians. *See Cooper,* 2014 WL 4606010, at *18. The ALJ acknowledged the clinical notes diagnosing fibromyalgia with symptoms of pain in both the upper and lower extremities, disturbed sleep, generalized fatigue and weakness, and muscle spasms. [ECF No. 11-2, PageID.60 (citing ECF No. 11-9, PageID.461-467; ECF No. 11-19, PageID.980-982)]. And he relied on Swafford's documented fibromyalgia symptoms in discounting the opinion of reviewing medical source, Larry Jackson, M.D.; the ALJ imposed greater exertional and manipulative limitations than those endorsed by Dr. Jackson. [ECF No. 11-2, PageID.61]. Notably, courts have found RFC assessments to be supported by substantial evidence when they are more restrictive than the opinion evidence. *Mosed v.*

9

*Comm'r of Soc. Sec.*, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), *adopted*, 2016 WL 1084679 (E. D. Mich. Mar. 21, 2016); *Taylor v. Berryhill*, 2018 WL 344984, at *4 (W.D. Ky. Jan. 9, 2018); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019).

Despite finding that Swafford was more limited than Dr. Jackson opined, the ALJ concluded that Swafford's treatment records "fail[ed] to provide strong support for [her] allegations of disabling symptoms and limitations." [ECF No. 11-2, PageID.60]; *see Stolz v. Berryhill*, 2019 WL 2291466, at *3 (W.D.Ky. May 29, 2019). He cited the treaters' clinical notes reflecting no tenderness to palpation, muscle pain, weakness or fatigue in finding that Swafford can perform a limited range of sedentary work. [ECF No. 11-2, PageID.61; ECF No. 11-15, PageID.746-750]. The ALJ also noted that Swafford's symptoms were stable. [ECF No. 11-2, PageID. 60]. The decision reflects the ALJ's consideration of both the presence and absence of clinically documented pain, tenderness to palpation, weakness and fatigue. "When an ALJ has examined the record as a whole and his decision is supported by substantial evidence, this Court must affirm the ALJ's decision—even if the Court might have decided the case differently." *Stolz,* 2019 WL 2291466, at *3 (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

10

Finally, although the decision references Swafford's normal gait and range of motion and the lack of joint pain and swelling, the Court does not believe the ALJ erred by merely mentioning these disfavored criteria. *See Shahin*, 2020 WL 38931, at *3. In finding Swafford not disabled, the ALJ relied at least as much on the absence of legitimately considered evidence, such as clinically documented tenderness to palpation, muscle pain, weakness and fatigue, as on the disapproved evidence, like gait and range of motion. [ECF No. 11-2, PageID.60-61]. And, despite noting normal objective findings, the ALJ accommodated Swafford as if these findings were abnormal, requiring the use of a handheld assistive device for her alleged ambulatory limitations in the RFC. [ECF No. 11-2, PageID.59].

In fact, the ALJ's assessed RFC is quite restrictive; he concluded that Swafford could perform a very limited range of sedentary work. [*Id.*]. Swafford does not show that she requires a more restrictive RFC, as is her burden. *Preslar*, 14 F.3d at 1110. Thus, even if the ALJ did err by overemphasizing objective criteria, such as a normal gait, the error is harmless. Remand is not warranted.

## C.

Swafford also argues that the ALJ erred by failing to acknowledge and give weight to the fact that her treating physician is a specialist (in

11

rheumatology), and by not inquiring further of her treating physician. [ECF No. 15].

The specialty of a treating physician must be considered by an ALJ when evaluating medical opinions. 20 C.F.R. §404.1527(c)(5). "Medical opinions" are defined by regulation as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including…symptoms, diagnosis, and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §404.1527(a)(1). Swafford supplied only the treatment records from her treating physicians. Those records contain some judgments on the nature of Swafford's diagnosis and the severity of her symptoms,[5] but they offer no judgments about what she can still do despite her impairments, or what restrictions her impairments impose. Thus, Swafford's treatment records were not "medical opinions." And because there were no treating medical opinions to evaluate, the ALJ's failure to acknowledge or give weight to the physicians' specialties cannot be error.

---

[5] Russell York, M.D., Swafford's treating rheumatologist, noted her symptoms to be either mild or moderate in 2016 and 2017. [ECF No. 11-9, PageID.466, 472; ECF No. 11-19, PageID.980, 994].

Likewise, the ALJ's failure to seek additional input from Swafford's treating physicians is not error. The ALJ did not have to obtain medical opinions from Swafford's treating physicians. *Gerrick v. Comm'r of Soc. Sec.*, 2016 WL 5369620, at *2–3 (E.D. Mich. Sept. 26, 2016), *aff'd,* 2017 WL 5992235 (6th Cir. Aug. 14, 2017) (claimant has the burden to seek out specific evidence to support her claim). An ALJ's affirmative duty to develop the factual record does not require him to "seek out a physician's medical opinion where one is not offered." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015).

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 18] be **GRANTED**; that Swafford motion [ECF No. 15] be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Dated: January 14, 2020

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 14, 2020.

                                        s/Marlena Williams
                                        MARLENA WILLIAMS
                                        Case Manager